PEOPLE *v.* DAVIS.

1. INTOXICATING LIQUORS—CRIMINAL LAW—QUESTION FOR JURY.

In prosecution for unlawful possession of intoxicating liquors, whether liquor, which was found in defendant's summer cottage, was in his possession, *held*, question for jury under evidence that he and his wife were both staying there and she was doing cooking, although there was testimony that cottage was rented to another who claimed to own the liquor.

2. CRIMINAL LAW—CONDUCT OF COURT.

In prosecution for violation of prohibition law, action of trial court in directing, in presence of jury, that complaint be made against defendant for perjury, stating that defendant had deliberately perjured himself, *held*, prejudicial error.

Error to Lapeer; Smith (Henry H.), J. Submitted June 13, 1929. (Docket No. 137, Calendar No. 34,378.) Decided July 8, 1929.

• Dwight Davis was convicted of violating the liquor law. Reversed, and new trial granted.

*Herbert W. Smith,* for appellant.

*Wilber M. Brucker,* Attorney General, and *Glen Smith,* Prosecuting Attorney, for the people.

McDONALD, J. The defendant was convicted under an information charging the unlawful possession of intoxicating liquor in his cottage at Lake Nepessing, in Lapeer county, Michigan. Officers searched the premises and found a quantity of liquor. It is the defendant's claim that he had rented the cottage to one Taylor, who was present at the time of the search. Taylor was a witness on the trial, and testi-

---

As to constitutional guaranties against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor, see annotation in 3 A. L. R. 1514; 13 A. L. R. 1516; 27 A. L. R. 709; 39 A. L. R. 811.

On admissibility of evidence obtained by unlawful search and seizure, see annotation in 24 A. L. R. 1408; 32 A. L. R. 804.

fied that he had rented the cottage, that the liquor belonged to him, that it was in his possession, and that the defendant had no connection with it. On this issue, which was fairly submitted to the jury, the defendant was convicted.

The first error alleged relates to the refusal of the court to direct a verdict in favor of the defendant on the ground that his possession of the liquor had not been shown.

The liquor was found in the defendant's cottage. His wife was there dressed in a manner that indicated that she was not a visitor. The defendant was on the lake fishing. They were both staying at the cottage. Mrs. Davis was doing the cooking for her husband and Taylor. These and other circumstances shown by the testimony made a case for the jury on the question of possession. The court did not err in submitting it.

Error is assigned on the remarks of the court during the examination of the defendant, who was a witness for himself at the trial.

The defendant had testified that he had not previously been arrested and convicted of any offense. Whereupon the court interrogated him as follows:

"*Q.* You are answering the questions, are you, and you want your answers to stand and go before the jury in that way, do you, Mr. Davis?

"*A.* Why, if I am right, which I think I am.

"*The Court:* I will say to the officers—is the sheriff around here—I say to the prosecuting officers and the sheriff that you can make a complaint against Mr. Davis for perjury.

"*Mr. Kenneth Smith:* I submit that isn't proper; I can explain that to the court.

"*The Court:* There is no explanation, Mr. Smith, you go and take your seat.

*"Mr. Kenneth Smith:* Well—

*"The Court:* You go and sit down. This witness has come in and deliberately perjured himself, and, Mr. Prosecutor, as soon as the court is dismissed you make a complaint, and Mr. Sheriff you can sign it charging the respondent here with perjury, and take him into custody. Go ahead with your questions."

In explanation of his action in ordering the arrest and prosecution of the defendant for perjury and its prejudicial effect upon the jury, the trial court says:

"His perjury was self-evident, and that the jury knew or was informed that respondent would be tried for his perjury was more wholesome than prejudicial."

It would have been just as "wholesome" if the action taken by the court had not been in the presence of the jury. After that a fair and impartial trial was impossible. It was so plainly prejudicial that further comment is unnecessary.

The judgment of conviction is reversed, and a new trial granted.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.